# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEMARCUS L., a minor and DOMINQUE L., individually, and as guardian and next friend of DEMARCUS L., )<br><br>Plaintiffs, )<br><br>v. )<br><br>BOARD OF EDUCATION OF THE CITY OF CHICAGO, DISTRICT 299, and THE ILLINOIS STATE BOARD OF EDUCATION, )<br><br>Defendants. ) | Case No. 13 C 5331 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On July 25, 2013, Plaintiffs Demarcus L., a minor, and Dominque L., individually and as guardian and next friend of Demarcus, filed a two-count Complaint against Defendants Board of Education of the City of Chicago, District 299 (the "District") and the Illinois State Board of Education ("ISBE") for violations of the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1401, *et seq.* In Count I of the Complaint, Plaintiffs seek judicial review of certain portions of the impartial hearing officer's ("IHO") administrative decision. *See* 20 U.S.C. § 1415(i)(2)(A). In Count II, Plaintiffs seek attorney's fees as the prevailing party pursuant to 20 U.S.C. § 1415(i)(3)(B). Before the Court is Plaintiffs' motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(a) as to Count I. For the following reasons, the Court denies Plaintiffs' motion.

**BACKGROUND**

At the time of the impartial due process hearing, Demarcus was an eight year-old boy attending second grade at Altgeld Elementary School in Chicago, Illinois. (R. 30, Pls.' Rule 56.1 Stmt. Facts ¶ 1.) Demarcus brings this action by and through his mother, Dominque, as guardian and next friend. (*Id.*) Dominque also brings this lawsuit on her own behalf. (*Id.* ¶ 2.) Demarcus and Dominque reside in Chicago within the boundaries of District 299. (*Id.*) The District is a Local Education Agency as defined in 20 U.S.C. § 1402(19) of the IDEA and, as such, is responsible for ensuring the provision of a free and appropriate public education ("FAPE") to all children residing in the District who, because of their disabilities, have special education needs. (*Id.* ¶ 3.) The ISBE is the Illinois state education agency charged with responsibility for compliance with requirements of the IDEA throughout Illinois. (*Id.* ¶ 4.)

Demarcus enrolled as a Chicago Public School ("CPS") student starting in the 2009-10 school year when he was in kindergarten. (*Id.* ¶ 7.) While he was in first grade, Demarcus exhibited some behavioral problems that led the school counselor to make a referral to the Salvation Army for counseling on January 21, 2011. (*Id.* ¶¶ 9, 10.) The referral form, completed by the school counselor, stated: "Per teacher's report, Demarcus displays rude and discourteous behavior, he can be disruptive during class activity … behaviors have included fighting with students and yelling out when student does not get his way." (*Id.* ¶ 10.) Thereafter, on January 26, 2011, the school suspended Demarcus for rude and discourteous behavior in the classroom. (*Id.* ¶ 11.)

During the fall of 2011, when Demarcus was in second grade, school staff completed anecdotal report logs showing that Demarcus had additional behavioral problems. (*Id.* ¶ 13.)

Staff specifically recorded incidents in which Demarcus disrupted the classroom and other school activities from September through December 12, 2011. (*Id*.) Also, the school suspended Demarcus for disrupting his classroom on both November 1 and November 15, 2011. (*Id*. ¶ 14.) While in the first and second grade at Altgeld, Demarcus received academic and behavioral support in the context of a "response to intervention" ("RTI"). (Defs.' Rule 56.1 Stmt. Facts ¶ 65; AR 1708-10.)

Despite Demarcus' disruptive behavior, CPS staff reported positive comments about him. (Pls.' Stmt. Facts ¶ 15.) Demarcus' first grade teacher testified at the impartial due process hearing that "he was always willing to help. He was a teacher pleaser. He would always want to do things in the classroom … from small jobs to finding papers or sweeping the floor. He also would help other students do things." (*Id*. ¶ 15a.) Demarcus' second grade teacher testified that "Demarcus is a very bright child, very eager to please the teacher. He's a leader in that … if he's doing any kind of group or collaborative work, he kind of takes on the role of the leader as far as trying to keep everyone on task." (*Id*. ¶ 15b.) Demarcus' reading teacher described him as "very intelligent, [he] is able to follow directions, works well with peers, enjoys reading, is very engaged…." (*Id*. ¶ 15c.)

On December 7, 2011, Dominique, without counsel, submitted a written request to the District to conduct a full individual evaluation ("FIE") to determine whether Demarcus was eligible for special education services. (*Id*. ¶ 16.) On December 13, 2011, Demarcus was admitted to Hartgrove Hospital in Chicago, a psychiatric facility, with a diagnosis of intermittent explosive disorder. (*Id*. ¶ 17.) The hospital discharged Demarcus on December 17, 2011. (*Id*.) On December 19, 2011, Dominique, through counsel, filed a request for a due process hearing

3

alleging that the District had violated the Child Find requirements of the IDEA and had failed to respond to the parent's request for a FIE. (*Id.* ¶ 18.) In March 2012, Dominque withdrew her request for a due process hearing. (*Id.* ¶ 24.)

After the parties fulfilled several procedural requirements, such as completing assessments and conducting "individualized education program" ("IEP") team meetings, Dominique, through her counsel, filed a renewed request for a due process hearing on May 2, 2012. (*Id.* ¶¶ 22, 23, 27.) In her hearing request, Dominque maintained that the District did not provide a free and appropriate public education ("FAPE") starting on September 3, 2010 based on the District's:

- a. Failure to respond adequately to obligations in the Child Find provisions of IDEA which require a District to identify children with potential disabilities, and to conduct full, individual evaluations of a student identified with a potential disability or impairment;

- b. Arbitrarily denying the parent's written request of 12/17/11 for a full and individualized evaluation;

- c. Failure to provide a written response to the parent's 12/17/11 request for an IEE [independent educational evaluation];

- d. Failure to administer medication during the school day as prescribed by student's physician;

- e. Failure to develop an IEP the provides adequate levels of services;

    - i. Failure to address academic delays in math and written language;

    - ii. Failure to provide OT [occupational therapy] services that address and document needs in areas of sensory processing, attention and organizational skills;

    - iii. Failure to provide speech/language services to address documented weakness in communication skills;

    - iv. Failure to provide adequate levels of social work and/or psychological

>                    counseling to the student;
>
> v.    Failure to provide assistive technology services;
>
> vi.   Failure to provide a placement that provides sufficient structure and support to ensure safety of the student; and
>
> vii.  Failure to provide all available school records in response to a request by parent.

(*Id.* ¶ 27.)

Shortly thereafter, the ISBE appointed an independent hearing officer ("IHO") to conduct an impartial due process hearing. (*Id.* ¶ 28.) The IHO conducted the hearing over eight days beginning in October 2012, continuing in November 2012, and concluding on March 4, 2013. (*Id.* ¶ 29.) Following the hearing, the IHO issued a written 31-page Final Hearing Officer Determination and Order on March 14, 2013. (*Id.* ¶ 30.) Both Dominique and the District requested clarification of the Final Hearing Officer Determination and Order, and on April 1, 2013, the IHO issued a Clarification Order denying both requests for clarification. (*Id.* ¶¶ 31, 32.)

The summary statement of the March 14, 2013 Final Hearing Officer Determination and Order states:

> The District filed a due process request requesting a finding that their evaluation was appropriate. The Parent filed a counter request alleging violations of IDEA related to child find; evaluation; IEP design; and Placement. The IHO found for the parent as to timeliness of evaluation, comprehensiveness of evaluation, IEP design, and Placement. The IHO found for the District on Child Find and timeliness of evaluation. The IHO found for the Parent on all other issues.

(*Id.* ¶ 34.) The IHO also entered the following order:

> By this order, the Student's IEP is amended as follows:
>
> (a) The portions of the recommendations of Dr. Daniels located in IHO Exhibit 9,

pp. 15-19 are to be included in Student's IEP moving forward: Recommendations 1 a, b, c, and d are to be included as accommodations in Student's IEP. Those recommendations are incorporated by reference by this order.

(b) The portions of the recommendations of Dr. Daniels located in IHO Exhibit 9, pp. 16-17, are to be included in Student's IEP moving forward. Student's goals are amended to include the goals contained in Recommendations 3 a, b, c, d, and g of IHO Exhibit 9, pp. 16-17. Those recommendations are incorporated by reference by this order.

(c) Student shall receive two hours per week of group and individual therapy using evidence based strategies to teach anger management and social problem solving skills.

(d) Student shall receive evidence based reading and writing instruction including reading interventions designed for students with learning disabilities.

(e) Student shall receive one hour per week of speech and language therapy to increase verbal short term and working memory capacity for verbal tasks; develop narrative sequencing skills to age appropriate levels; and develop phoneme letter association for appropriate grade level.

(*Id.* ¶ 35.) Moreover, the Final Hearing Officer Determination and Order contained the following language:

- Within thirty days of this order, the District shall convene an IEP meeting wherein the IEP Team shall develop goals which address Student's deficits in written expression and oral expression. The IEP Team shall also determine an appropriate physical location of services for Student which can implement the accommodations and services required by this order.

- Within thirty days of this order, the District shall reimburse Parent for the independent speech and language assessment in the amount of $1,390.00 and the independent social work assessment in the amount of $2,900.00.

- The District shall pay for independent occupational therapy assessments in the areas of sensory processing, organizational skills, and executive functioning. The District shall pay for an independent assistive technology assessment. The District shall pay for an independent functional behavior analysis and behavioral intervention plan. The District shall make payment within 21 days of being presented invoices from the Parent.

6

(*Id.*)

In his March 14, 2013 decision, the IHO also determined that the District failed to develop an appropriate IEP from March 13, 2012 until March 14, 2013. (*Id.* ¶ 36.) Last, the IHO denied Plaintiffs' claim for compensatory education services. (*Id.* ¶ 37.)

## SUMMARY JUDGMENT STANDARD

In general, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment in the context of an IDEA case, however, "has a different meaning than it has in a typical Rule 56 motion." *Alex R. ex rel. Beth R. v. Forestville Valley Comm. Unit Sch. Dist. No. 211*, 375 F.3d 603, 611 (7th Cir. 2004). As the Seventh Circuit explains, a motion for summary judgment under the IDEA "might more accurately have been titled 'motion for judgment under the IDEA.'" *Id.* (citation omitted). The parties challenging the administrative decision — in this case Plaintiffs — bear the burden of proof in the federal action. *See Marshall Joint Sch. Dist. No. 2 v. C.D. ex rel. Brian D.,* 616 F.3d 632, 636 (7th Cir. 2010). "In deciding whether the challenging party meets that burden, the district court '(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.'" *Alex R.,* 375 F.3d at 611 (quoting 20 U.S.C. § 1415(i)(2)(B)). "[T]he provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Board of Educ. of Twp. High Sch. Dist. No. 211 v. Ross*, 486 F.3d 267, 270 (7th

7

Cir. 2007).

In IDEA cases, federal courts do not defer to the hearing officer on questions of law, but will give "due weight" to the hearing officer on issues of fact. *See Brian D.*, 616 F.3d at 636; *M.B. ex rel. Berns v. Hamilton Se. Sch.*, 668 F.3d 851, 860 (7th Cir. 2011). If the reviewing federal court decides the IDEA claims based on the administrative record alone, it owes considerable deference to the hearing officer, and may set aside the administrative order only if it is "strongly convinced that the order is erroneous[, a] level of review akin to the standards of clear error or substantial evidence." *Alex R.*, 375 F.3d at 612 (internal quotation marks and citation omitted); *see also M.B.*, 668 F.3d at 860. Here, the parties did not introduce additional evidence to the Court, and thus, under the circumstances, a "motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *M.B.*, 668 F.3d at 860 (citations and quotation marks omitted).

## ANALYSIS

**I.     Introduction**

The IDEA seeks to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A); *see also Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239, 129 S. Ct. 2484, 174 L. Ed. 2d 168 (2009); *School Comm. of the Town of Burlington, Mass. v. Department of Educ. of the Commw. of Mass.*, 471 U.S. 359, 367-68, 105 S. Ct. 1996, 85 L. Ed. 2d 38 (1985). In other words, the IDEA requires school districts that receive federal assistance to establish "policies and procedures to ensure" that disabled children receive a "free appropriate

8

public education," or "FAPE."  *See* 20 U.S.C. § 1412(a)(1)(A); *Jamie S. v. Milwaukee Public Sch.,* 668 F.3d 481, 485 (7th Cir. 2012).

Once a covered school district identifies a disabled student in need of special educational assistance, a team, including parents, teachers and administrators, must develop an "individualized education program" ("IEP") for the student.  *See* 20 U.S.C. §§ 1412(a)(4), 1414(d); *see also Jamie S.,* 668 F.3d at 486.  An IEP must provide personalized instruction with sufficient support services so that the child benefits from that instruction.  *See Board of Educ. of the Hendrick Hudson C. Sch. Dist., Westchester Cnty. v. Rowley,* 458 U.S. 176, 203, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982).  This means that the IEP "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade."  *Id.* at 204.  After a school district creates an IEP, students have a statutory right to file a due process complaint and have that complaint adjudicated before a state administrative tribunal at an "impartial due process hearing."  *See* 20 U.S.C. §§ 1415(b)(6), (e)(1), (f)(1); *Jamie S.*, 668 F.3d at 486.

## II. Plaintiffs' Challenges to the Final Hearing Officer's Determination and Order

### A. Child Find Requirements

Plaintiffs challenge the IHO's decision that the District did not violate the "Child Find" obligations under the IDEA arguing that the District failed to identify Demarcus' behavioral disability prior to November 2011.  First, Plaintiffs argue that the IHO used the incorrect legal standard when assessing whether the District complied with the IDEA's Child Find requirements.  To comply with the IDEA Child Find requirements, school districts must evaluate and identify children in need of special education services, namely, students who are disabled under the statute.  *See* 20 U.S.C. § 1412(a)(3)(A); 34 C.F.R. § 300.111; *see also D.K. v.*

9

*Abington Sch. Dist.,* 696 F.3d 233, 249 (3d Cir. 2012) ("School districts have a continuing obligation under the IDEA and § 504 — called Child Find — to identify and evaluate all students who are *reasonably suspected* of having a disability under the statutes.") (emphasis in original) (internal quotation marks omitted).[1] Child Find, however, "does not demand that schools conduct a formal evaluation of every struggling student." *D.K.*, 696 F.3d at 249. The standard in establishing whether a school district has failed to identify a student with a disability under Child Find is that the school district overlooked "clear signs of disability" and was "negligent in failing to order testing," or "that there was no rational justification for not deciding to evaluate." *Board of Educ. of Fayette County, Ky. v. L.M.,* 478 F.3d 307, 313 (6th Cir. 2007) (quotation omitted); *see also J.S. v. Scarsdale Union Free Sch. Dist.,* 826 F.Supp.2d 635, 661 (S.D.N.Y. 2011) (collecting cases).

In relation to the IDEA's Child Find requirements, the March 14, 2013 Final Hearing Officer Determination and Order states as follows:

> The undersigned finds that it is not clear whether Student needed special education before November, 2011, and therefore, the District did not violate Child Find until the suspensions in November, 2011. The undersigned makes: (1) an inference that the District could have rationally believed that RTI interventions might have been successful in ameliorating Student's behavior until December, 2011 when Student was hospitalized; and (2) a credibility finding that the District did believe it could have ameliorated Student's behavior. Moreover, the undersigned makes an inference that the District was not negligent in failing to

---

[1] Section 504 of the Rehabilitation Act of 1973 also provides for a free and appropriate public education ("FAPE") to handicapped children. *See CTL ex rel. Trebatoski v. Ashland School Dist.,* ___F.3d ___, 2014 WL 631135 (7th Cir. Feb. 19, 2014) ("[F]or 504 plan violations to constitute disability discrimination, they must be significant enough to effectively deny a disabled child the benefit of a public education."); *see also Timms ex rel. Timms v. Metro. Sch. Dist.,* 722 F.2d 1310, 1317-18 (7th Cir. 1983) ("[T]he Rehabilitation Act is broader than the [IDEA] in the range of federally-funded activities it reaches, but narrower in the kind of actions it regulates.").

10

order testing based on its monitoring of Student through the RTI process and
attempted interventions through RTI.

(Administrative Record ("AR") 0287-88; Defs.' Stmt. Facts ¶¶ 70-72.)

In the present motion, Plaintiffs argue that the IHO's statement — "The undersigned finds that it is not clear whether Student needed special education before November, 2011, and therefore, the District did not violate Child Find" — indicates that the IHO applied a higher Child Find standard than necessary by requiring a referral for an evaluation only when it is "clear" to school staff that the child is eligible for special education services. Plaintiffs' mis-characterization of the IHO's decision and attendant arguments ignore the fact that the IHO also made factual inferences that no Child Find violation occurred prior to December 2011 — when the District began the IDEA evaluation process — including that the District could have rationally believed that RTI interventions might have been successful in ameliorating Demarcus' behavior until December 2011 when he was hospitalized with a diagnosis of intermittent explosive disorder.

Equally important, Plaintiffs do not challenge the IHO's statement of law in which he stated that "[i]n order to demonstrate a child find violation, a parent must show that either: (1) school officials overlooked clear signs of disability and were negligent in failing to order testing; or (2) there was no rational justification for deciding not to evaluate. *Board of Education of Fayette County, Kentucky v. L.M.*, 47 IDELR 122, 478 F.3d 307 (6th Cir. 2007)." (AR 0292, ¶ 119.) In short, the IHO's conclusion that prior to November 2011 it was not clear whether Demarcus needed special education is consistent with the standard's reference to "clear signs of disability." Also, the IHO's inference that the District was not negligent when it did not order an evaluation in early 2011 is also consistent with this standard. Therefore, Plaintiffs' argument

11

that the IHO used the incorrect legal standard when assessing whether the District complied with the IDEA's Child Find requirements is unavailing.

Next, Plaintiffs challenge the IHO's factual findings and credibility determinations. Plaintiffs first point to the hearing testimony of Dr. Carole Jansson, who testified that the January 2011 Salvation Army referral regarding Demarcus' disruptive behavior was an event that should have triggered a full evaluation of Demarcus' behavioral issues. In the March 14, 2013 Final Hearing Officer Determination and Order, however, the IHO found that Dr. Jansson's opinions and testimony were not credible, and thus disregarded her findings pertaining to the alleged Child Find violation. (Defs.' Stmt. Facts ¶ 68; AR 0282.) Specifically, the IHO based his credibility determination on Dr. Jansson's admission that she did not know Demarcus' academic abilities, emotional and behavior needs in the classroom, and the exact nature of his disability. (*Id.*)

The Court must give the IHO's factual findings "due weight," which varies from case to case. *Alex R.,* 375 F.3d at 612 (citation omitted). More specifically, "[a]t one end of the continuum, where the district court does not take new evidence and relies solely on the administrative record, it owes considerable deference to the hearing officer, and may set aside the administrative order only if it is 'strongly convinced that the order is erroneous.'" *Id.* Also, federal courts review the IHO's credibility determinations for clear error and only reverse an IHO's credibility determinations if they are patently wrong. *See Brian D.*, 616 F.3d at 638. Here, the IHO rejected Dr. Jansson's testimony that the Salvation Army referral should have triggered a full evaluation because Dr. Jansson did not have a full picture of Demarcus. Namely, she did not know the precise nature of his disability, his academic abilities, or his emotional and

behavioral needs.  Plaintiffs fail to explain how or why the IHO's conclusion that this testimony was not credible was patently wrong or clearly erroneous.  *See United States v. Fluker*, 698 F.3d 988, 1001 (7th Cir. 2012) ("Findings of fact are clearly erroneous only when, 'after considering all the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made.'") (citation omitted).  Without more, Plaintiffs' challenge to the IHO's credibility determination fails.

Also, Plaintiffs highlight Demarcus' social worker Laura Thompson's testimony that Demarcus had behavioral difficulties in first grade that should have triggered an evaluation.  Ms. Thompson gave her testimony in the context of compensatory education, as discussed below. More importantly, her testimony does not establish that the IHO's Child Find factual findings were clearly erroneous, especially in light of other hearing evidence and the IHO's findings that the District could have rationally believed that RTI interventions might have been successful in ameliorating Demarcus' behavior until December 2011.  The IHO further concluded that District personnel managed and de-escalated Demarcus' behavior through the first semester of 2011 while Demarcus was in second grade.  (Defs.' Stmt. Facts ¶ 67; AR 0277 ¶ 20, AR 0280 ¶ 45.) Moreover, the IHO found that the Salvation Army counseling sessions diminished Demarcus' disruptive behavior.  (AR 0277 ¶ 20.)

Last, Plaintiffs argue that the District violated the IDEA's Child Find provision based on the hearing testimony of Plaintiffs' speech pathologist Arnell Brady.  In his hearing testimony, Dr. Brady referred to Demarcus' history of asthma,[2] hoarse speech, and family reports of

---

[2] The record reflects that in January 2010, the District created a plan to accommodate Demarcus' asthma under Section 504 the Rehabilitation Act of 1973.  (AR 0276, ¶ 14.)

difficulty understanding him. (Pls.' Stmt. Facts ¶ 46.) Dr. Brady then recommended 65 additional hours of speech/language services as compensatory education based on his finding that Demarcus should have had speech services as early as in kindergarten. (*Id*.) Again, this specific testimony was in the context of compensatory education, as discussed in more detail below. Moreover, Dr. Brady did not specifically testify that Demarcus' speech impairment should have triggered an evaluation at any point during Demarcus' enrollment as a CPS student prior to the due process hearing. (AR 2302-78.) Instead, Dr. Brady vaguely testified that Demarcus "should have been placed in speech-language services when he entered school...." (AR 2345.)

In the context of all of the hearing evidence — including the fact that the Independent Education Evaluator did not conclude that there was a Child Find violation — the IHO's rejection of Dr. Brady's threadbare testimony that Demarcus should have been placed in speech-language services when he entered school is not clearly erroneous. *See Ross,* 486 F.3d at 270; *see also Fluker,* 698 F.3d at 1001. As the Seventh Circuit instructs, "[b]ecause school authorities are better suited than are federal judges to determine educational policy, the district court is required, in its independent evaluation of the evidence, to give due deference to the results of the administrative proceedings." *Beth B. v. Van Clay,* 282 F.3d 493, 496 (7th Cir. 2002). Under this standard, the Court concludes that the IHO's factual findings regarding Child Find are not in err and the IHO's decision was supported by a preponderance of the evidence.

### B. Compensatory Education

Plaintiffs also challenge the IHO's denial of the remedy of compensatory education. The IDEA authorizes a district court to award an aggrieved parent "such relief as the court

determines is appropriate," *see* 20 U.S.C. § 1415(i)(2)(C)(iii), which includes the equitable remedy of compensatory education. *See Evanston Cmty. Consol. Sch. Dist. No. 65 v. Michael M.,* 356 F.3d 798, 803 (7th Cir. 2004); *Board of Educ. Oak Park & River Forest High Sch. Dist. 200 v. Illinois State Bd. of Educ. & Todd A.,* 79 F.3d 654, 656 (7th Cir. 1996). The remedy of compensatory education awards parents and students lost educational opportunities based on the fact that the IDEA "entitles a disabled child to a free public education tailored to his special needs until he turns 21." *Todd A.*, 79 F.3d at 655. Compensatory education is often "[r]elief in the form of reimbursement for out-of pocket educational expenses." *Brown v. Bartholomew Consol. Sch. Corp.,* 442 F.3d 588, 598 (7th Cir. 2006). Courts examine whether the remedy of compensatory education is appropriate in light of the IDEA's purpose, which is "principally to provide handicapped children with 'a free appropriate public education' which emphasizes special education and related services designed to meet their unique needs." *Jaccari J. v. Board of Educ. of City of Chicago, Dist. No. 299*, 690 F.Supp.2d 687, 707 (N.D. Ill. 2010) (citation omitted); 20 U.S.C. § 1400(d)(1)(A); *see also Reid ex rel. Reid v. District of Columbia,* 401 F.3d 516, 524 (D.C. Cir. 2005). Not every IDEA violation, however, warrants compensatory education relief. *See Michael M.,* 356 F.3d at 803. Moreover, "awarding compensatory education is a decision that rests in the sound discretion of the district court." *Brown,* 442 F.3d at 598.

Plaintiffs contend that Demarcus is entitled to compensatory services for the twelve month period from March 13, 2012 until March 14, 2013 in which the IHO concluded that the District failed to develop an appropriate IEP. In the March 14, 2013 Final Hearing Officer Determination and Order, the IHO denied compensatory education because there was no Child

15

Find violation, but did not give an explanation for his denial of compensatory education for this later time period of March 13, 2012 to March 14, 2013. Nonetheless, three expert witnesses testified at the impartial due process hearing giving recommendations for compensatory education services, including Dr. Jansson, whose Child Find testimony the IHO did not find credible. Dr. Jansson's additional compensatory education testimony vaguely asserts that Demarcus should receive an hour per day of unspecified services as determined by the IEP team. (Pls.' Stmt. Facts ¶ 42.) In addition, Demarcus' social worker Laura Thompson recommended two additional hours per week of social work support — above and beyond the two hours per week that the IHO adopted. (*Id.* ¶ 51.) As discussed, Dr. Brady recommended 65 hours of speech/language services as compensatory education based on his finding that Demarcus should have had speech services as early as in kindergarten. (*Id*. ¶ 46.)

Although Plaintiffs outline this testimony, they fail to explain how these additional services are designed to meet Demarcus' unique needs for any lost education opportunities, *see Reid,* 401 F.3d at 524, especially in light of the substantial remedies provided by the IHO in the March 14, 2013 Final Hearing Officer Determination and Order. Indeed, Plaintiffs admit that the IHO ordered extensive changes to Demarcus' IEP, including a change in placement, addition of speech/language therapy, addition of specialized reading and writing instruction, three independent evaluations in areas of Occupational Therapy, Assistive Technology, and Functional Behavior Analysis, and an increase in social work services from 15 minutes per week to 120 minutes per week.

In sum, Plaintiffs have failed to articulate how the requested compensatory education sufficiently targets Demarcus' unique needs, especially in light of the additional services now

required under Demarcus' IEP.  *See Reid,* 401 F.3d at 524; *see also Phillips ex rel. T.P. v. District of Columbia*, 736 F.Supp.2d 240, 248 (D.D.C. 2010) ("plaintiff has the burden of 'propos[ing] a well-articulated plan that reflects [the student's] current education abilities and needs and is supported by the record.'") (citation omitted).  Because the equitable remedy of compensatory education is awarded only in exceptional circumstances, the Court, in its discretion, concludes that the remedy of compensatory education is not warranted under the circumstances here.  *See Brown*, 442 F.3d at 597, *Todd A.,* 79 F.3d at 660.  On a final note, because the District did not violate the IDEA's Child Find provisions, Plaintiffs are not entitled to compensatory education for the time period of January 2011 through March 2012.  *See Jaccari J.,* 690 F.Supp.2d at 707.

## CONCLUSION

For these reasons, the Court denies Plaintiffs' motion for partial summary judgment.

**Dated**:  March 11, 2014

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**